**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RICK ONSTOTT,

                Plaintiff,

v.

EQUINOX GOLD COAST, INC. D/B/A
EQUINOX FITNESS CLUB & PRIMA
PONGSPIKUL,

                Defendants.

Case No.: 1:18-cv-04642

Judge Manish S. Shah
Magistrate Judge Maria Valdez

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
COUNTS III & IV OF THE FIRST AMENDED COMPLAINT**

Defendants Equinox Holdings, Inc. ("Equinox") and Prima Pongspikul ("Pongspikul"), by

their attorneys Katrina Y. Morgan, Neil H. Dishman, and Sarah J. Gasperini of Jackson Lewis

P.C., submit this memorandum of law in support of their Motion to Dismiss Counts III and IV of

Plaintiff Rick Onstott's ("Onstott") First Amended Complaint ("FAC") pursuant to Fed. R. Civ.

P. 12(b)(6).

**I.     Facts Alleged by Onstott[1]**

Onstott worked for Equinox as a manager in training from about March 20, 2017 until his

discharge on September 23, 2017. (FAC, Doc. 25, ¶4.) About one week after his discharge from

Equinox, Onstott (by his counsel) filed a charge of discrimination ("Charge") with the U.S. Equal

Employment Commission ("EEOC") against Equinox and one of his former managers, Prima

Pongspikul. (*Id.* at ¶30 and Ex. 1.) The Charge was cross-filed with the Illinois Department of

Human Rights ("IDHR"). (*Id.* at ¶46.) In his Charge, Onstott alleged that he experienced

---

[1] As required on a Rule 12(b)(6) motion to dismiss, Equinox and Pongspikul have assumed the truth of all facts pleaded in Onstott's Complaint, but reserve the right to contest any and all such facts at a later date, should their Motion to Dismiss Counts III and IV be denied.

workplace harassment, discrimination, and retaliation, including placement on a performance improvement plan and the termination of his employment, because of his HIV status. (*Id.* at Ex. 3.) The EEOC issued Onstott a Notice of Right to Sue (Issued on Request) on April 18, 2018 and mailed it to his counsel. (*Id.* at ¶31 and Ex. 2.) Onstott filed his original, two-count complaint alleging violations of the ADA against Equinox on July 5, 2018. (Doc. 1.)

On September 20, 2018, the IDHR mailed Onstott's counsel a "Notice of Dismissal for Lack of Substantial Evidence and Order of Closure" ("Dismissal Notice"), dismissing Onstott's Charge and giving him 90 days to commence a civil action in an appropriate court of competent jurisdiction. (Doc. 25, ¶¶ 47, 53 and Ex. 3.) Onstott's counsel received the Dismissal Notice four days after its mailing, giving Onstott until December 24, 2018[2] to sue under the IHRA. (*Id.* at ¶¶ 47, 53.)

On October 4, 2018, during the parties' status conference, Onstott's counsel advised that he would be moving to amend Onstott's original complaint to add state law claims against Equinox and one of its managers individually (Pongspikul) under the Illinois Human Rights Act ("IHRA"). (*See* Transcript of Proceedings held on 10/04/18, Doc. 27, 2:20 – 3:1; Doc. 22, ¶¶1, 8.) Onstott moved to amend his original complaint to add IHRA claims against Equinox and Pongspikul on January 15, 2019. (Doc. 22.) The Court granted Onstott's motion on February 1, 2019. (Doc. 24.) Onstott filed his FAC on February 5, 2019. (Doc. 25.)

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To meet the requirements of Rule 8(a) and survive a Rule 12(b)(6) motion, a complaint must not only provide the defendant

---

[2] Because Onstott's 90-day limitations period fell on a Sunday, he had until the next business day to file. *See* Fed. R. Civ. P. 6(a)(3).

with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 699-700 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citation omitted). If, however, "the allegations of the complaint itself set forth everything necessary to satisfy [an] affirmative defense," such as a statute of limitations, the district court can dismiss the complaint as untimely under Rule 12(b)(6). *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see Davila v. City of Chi.*, No. 1:18-cv-8145, 2018 U.S. Dist. LEXIS 178296, at **12-13, 2018 WL 5024910 (Shah, J.) (N.D. Ill. Oct. 17, 2018).[3]

### III.     Argument

Onstott's 90-day limitation period to sue under the IHRA lapsed before he moved this Court to add claims against Equinox and Pongspikul under the IHRA. Although Onstott hints that this delay resulted from Equinox's conduct (*see* Doc. 22, ¶8), he cannot allege the extraordinary circumstances or misconduct necessary to trigger equitable tolling (or equitable estoppel) required to save his untimely IHRA claims. For these reasons, Counts III and IV of the FAC must be dismissed under Rule 12(b)(6) as untimely and Pongspikul terminated as a defendant.

#### A.  Counts III and IV of Onstott's Complaint Are Untimely and Must Be Dismissed.

An action alleging a violation of the IHRA must be filed within ninety days after a complainant receives his notice of right to commence a civil action from the IDHR. *See* 775 ILCS 5/7A-102(A-1)(3). This rule is generally inflexible—a "plaintiff's failure to timely file his IHRA claims within the ninety days is fatal to his claim." *Moultrie v. Penn Alum. Int'l, LLC*, No. 11-cv-500, 2012 U.S. Dist. LEXIS 106133, at *26, 2012 WL 3113914 (S.D. Ill. Jul. 31, 2012) (dismissing

---

[3] Unpublished cases are attached as Ex. A.

3

plaintiff's IHRA claims, filed four months after receipt of the IDHR dismissal notice, as untimely); *see also Anooya v. Hilton Hotels Corp.*, 733 F.2d 48 (7th Cir. 1984) (dismissing plaintiff's employment discrimination complaint under Title VII, filed 91 days after receipt of right-to-sue notice as untimely).

Onstott admits receiving the IDHR's Dismissal Notice on September 24, 2018. (Doc. 25, ¶53 and Ex. 3). The Dismissal Notice expressly stated that Onstott could "commence a civil action against Respondent in the appropriate state circuit court or other appropriate court of competent jurisdiction within ninety (90) days after receipt of this Notice." (*See* Doc. 25, Ex. 3, ¶2.) It also warned Onstott that his "charge(s) are dismissed with prejudice with no right to further proceed if a timely written complaint is not filed with the appropriate circuit court." (*Id.* at Ex. 3, ¶3.) Onstott thus cannot dispute that he had until December 24, 2018 to sue Equinox and Pongspikul under the IHRA. *See Edwards v. Johnson*, 198 F.Supp.3d 874, 878 (N.D. Ill. 2016) (finding 90-day limitations period begins on the date that claimant or claimant's attorney receives the right-to-sue notice). Onstott waited until January 15, 2019 to do so.[4] Because Onstott was 23 days too late in acting on the IDHR Dismissal Notice, his IHRA claims (FAC Counts III and IV) must be dismissed with prejudice, and newly-added Pongspikul must be terminated as a defendant.

### B. Tolling Defenses Cannot Save Onstott's Untimely IHRA Claims.

In light of the foregoing, the Court need not proceed any further before deciding to dismiss FAC Counts III and IV, and Pongspikul as a defendant. However, to the extent the Court is inclined to consider tolling defenses as an exception to the strictly construed 90-day limitations period (which it should not),[5] that cannot save Plaintiff's newly added counts and defendant. "[E]quitable

---

[4] Onstott did not move for leave to file the FAC until January 15, 2019. (*See* Doc. 22.)
[5] For this exception to be available in the first instance, the Court would need to construe the IHRA's statute of limitations as non-jurisdictional, similar to the federal Title VII statute of limitations (a question which it need not reach).

tolling is an exception to the general rule" strictly construing the 90-day limitations period, *Davis v. Browner*, 113 F.Supp.2d 1223, 1227 (N.D. Ill. 2000) (citation omitted). However, that exception is reserved only for situations in which the claimant has made a good faith error, such as bringing a timely complaint in the wrong court, or has been prevented in some extraordinary way from filing his complaint in time and has otherwise pursued his rights diligently. *Id.*; *see also Lee v. Cook Cnty.,* 635 F.3d 969, 972 (7th Cir. 2011). Plaintiff does not and cannot make this showing.

Here, Onstott had actual notice of his filing deadline under the IHRA and he missed it. (*See* Doc. 22 and Doc. 25, Ex. 3.) Although he would like to shift responsibility to Equinox for this delayed filing, he cannot do so: that Equinox declined to consent to the filing of the FAC or to agree to waive service thereof in no way prevented Onstott from taking timely action to file the FAC or, at a minimum, notice his motion.[6] (*See* Doc. 27, 3:25 – 4:2.) He did neither. Onstott's failure to exercise due diligence does not support equitable relief from the statute of limitations. *See Irwin v. Dep't of Vet. Affairs*, 498 U.S. 89, 93 (1990). Because the circumstances surrounding the filing of Onstott's FAC are not the extraordinary ones that would support equitable tolling of the limitations period, Counts III and IV must be dismissed, and Pongspikul must be terminated as a defendant.

## CONCLUSION

For these reasons, Equinox Holdings, Inc. and Prima Pongspikul respectfully move that this Court enter an order dismissing Onstott's IHRA claims (Counts III and IV) with prejudice, terminating Pongspikul as a defendant, and granting any other relief as this Court finds just and proper.

\*     \*     \*

---

[6] For the same reason, equitable estoppel does not apply.

5

Dated: February 22, 2019

Respectfully submitted,

**EQUINOX HOLDINGS, INC. and
PRIMA PONGSPIKUL**

By: s/ Katrina Y. Morgan
               One of Its Attorneys

| | |
|---|---|
| Neil H. Dishman | Katrina Y. Morgan |
| Sarah J. Gasperini | Jackson Lewis P.C. |
| Jackson Lewis P.C. | 222 S. Central Ave., Suite 900 |
| 150 N. Michigan Ave., Suite 2500 | St. Louis, MO 63105 |
| Chicago, IL 60601 | Tel:   314.827.3975 |
| Tel:   312.787.4949 | Fax:   314.827.3940 |
| Fax:   312.787.4995 | Email: Katrina.Morgan@jacksonlewis.com |
| Email: Neil.Dishman@jacksonlewis.com | |
|       Sarah.Gasperini@jacksonlewis.com | |

## CERTIFICATE OF SERVICE

I, Katrina Y. Morgan, certify that on February 22, 2019, I caused this **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS III AND IV OF THE FIRST AMENDED COMPLAINT** to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served on all attorneys of record registered with the Court's ECF/CM system.

*/s/ Katrina Y. Morgan*

6

# Exhibit A

No *Shepard's* Signal™
As of: February 22, 2019 6:29 PM Z

## *Davila v. City of Chicago*

United States District Court for the Northern District of Illinois, Eastern Division

October 17, 2018, Decided; October 17, 2018, Filed

No. 17 CV 8145

**Reporter**

2018 U.S. Dist. LEXIS 178296 *; 2018 WL 5024910

ESPERANZA DAVILA, on behalf of decedent's minor children, and as administrator of the ESTATE OF HECTOR HERNANDEZ, Plaintiffs, v. CITY OF CHICAGO, PATRICK KELLY, and ANTONIO CORRAL, Defendants.

## Core Terms

misconduct, tolling, discovery, statute of limitations, plaintiffs', minors, lawsuits, courts, police officer, file suit, rights, equitable estoppel, investigate, substantive-due-process, diligence, officers', shooting, fraudulent concealment, federal claim, companionship, due-process, accrued, cases, shot

**Counsel:  [*1]** For Esperanza Davila, Estate of Hector Hernandez, Plaintiffs: Jeffrey Brooks Granich, LEAD ATTORNEY, Joshua L Morrison, Law Office of Jeffrey Granich, Chicago, IL; Antonio Maurizio Romanucci, Bryce Thomas Hensley, Bhavani Keeran Raveendran, Romanucci & Blandin, LLC, Chicago, IL.

For City Of Chicago, Defendant: Raoul Vertick Mowatt, City of Chicago Department of Law, Chicago, IL.

For Patrick Kelly, Antonio Corral, Defendants: Kenneth M. Battle, LEAD ATTORNEY, Jessica Gomez-Feie, Winnefred A. Monu, O'Connor & Battle LLP, Chicago, IL.

**Judges:** Manish S. Shah, United States District Judge.

**Opinion by:** Manish S. Shah

## Opinion

**Memorandum Opinion and Order**

Chicago Police Officers Kelly and Corral shot and killed Hector Hernandez in his girlfriend's home where he was visiting his two-and-a-half-year-old son. Esperanza Davila, Hernandez's girlfriend, filed this lawsuit against the officers and the City on behalf of Hernandez's son, daughter, and his estate. Defendants move to dismiss, and for the reasons discussed below, that motion is granted.

**I. Legal Standards**

A complaint may be dismissed pursuant to *Rule 12(b)(6)* if it fails to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6)*. A plaintiff's "[f]actual allegations must be enough to raise **[*2]** a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). All reasonable inferences are

drawn in favor of the non-movant. *Squires-Cannon v. Forest Preserve Dist. of Cook Cty., 897 F.3d 797, 802 (7th Cir. 2018)*.

## II. Background

On April 7, 2014, while Hector Hernandez was visiting his two-and-a-half-year-old son at his girlfriend's home, defendant Chicago Police Officers Patrick Kelly and Antonio Corral entered the home and without provocation shot and killed Hernandez. [29] ¶¶ 6, 14, 16, 32.[1] Other Chicago police officers were present and directed tasers at Hernandez. *Id.* ¶ 30. They had him cornered in the kitchen when Officers Kelly and Corral fired thirteen rounds into Hernandez's back. *Id.* ¶¶ 30, 33. Esperanza Davila, Hernandez's girlfriend who was pregnant with the couple's second child, was also present. *Id.* ¶¶ 15, 17.[2]

At the time of the shooting, Officer Kelly had an extensive history of violent and alarming behavior both on and off-duty. *Id.* ¶ 36. The City knew that Kelly had been arrested for assault or battery at least twice and that a long list of complaints had been filed against him for violence and misconduct **[*3]** ranging from using derogatory racial slurs, to assaulting a superior officer. *Id.* ¶¶ 37, 39. In one especially disturbing instance, Kelly tased a pregnant woman without justification, causing a miscarriage. *Id.* Different City entities, including the Office of Professional Standards, the Independent Police Review Authority, and the Bureau of Internal Affairs, investigated Kelly's behavior on many occasions. *Id.* ¶¶ 41, 44. But the City sustained only one allegation, for an assault on a fellow police officer,

allowing most of Kelly's misconduct to go unpunished. *Id.* ¶ 55. The City was also aware that Kelly had been named as a defendant in at least six civil-rights lawsuits. *Id.* ¶ 45. Despite knowledge of Kelly's violent tendencies, the City kept him on as a police officer. *Id.* ¶ 46.

The City's treatment of Kelly's misconduct was not unique; between 2004 and 2011, of the 968 complaints filed against Chicago police officers for domestic battery, only 3% resulted in an officer's termination or resignation. *Id.* ¶ 67. The Police Accountability Task Force Report 2016 found that "no dedicated system exists to identify and address patterns or practices" of complaints against officers, and since **[*4]** "its inception, [the Independent Police Review Authority] has had the power to examine patterns of complaints when investigating misconduct, but has not exercised it." *Id.* ¶ 76. When investigating the Chicago Police Department in 2017, the Department of Justice found: from 2011-2016 fewer than 2% of the 30,000 complaints of police misconduct were sustained, the City did not investigate most of the cases it was legally required to, and that when it did, investigations were designed to justify an officer's actions rather than seek the truth. *Id.* ¶ 77. The City and police officers acknowledged that a code of silence existed and that it led to lying and affirmative efforts to conceal evidence. *Id.* When officers were disciplined, it was for misconduct far less serious than the conduct complained about. *Id.* The City had no early warning system to find, rehabilitate, discipline, or terminate officers with histories of misconduct. *Id.* ¶ 89. The City and its Law Department also consistently failed to cooperate with discovery requests in lawsuits involving police officers, resulting in sanctions. *Id.* ¶¶ 106-107.

After Hernandez's death, Davila hired lawyers and they submitted a FOIA request on **[*5]** her

---

[1] Bracketed numbers refer to entries on the district court docket. The operative complaint is [29].

[2] Although the plaintiffs include the names of the children in some of their filings, under *Fed. R. Civ. P. 5.2*, minors' full names may be omitted from the public record.

2018 U.S. Dist. LEXIS 178296, *5

behalf. *Id.* ¶ 115. The City responded but redacted the names of the officers involved. *Id.* ¶ 116. In line with its practice of failing to cooperate with discovery, the City repeatedly failed to disclose evidence of Officer Kelly's role in the Hernandez shooting in other lawsuits where he was a defendant. *Id.* ¶ 113. After Kelly shot Hernandez, the Independent Police Review Authority initiated an investigation and created a LOG number and U-file number for the incident. *Id.* ¶ 114. But when plaintiffs' counsel in other cases requested all documents relating to incidents involving Kelly, the City did not produce or identify anything tying him to the Hernandez investigation. *Id.* ¶¶ 117-27.

## III. Analysis

Davila brings claims on behalf of Hernandez's children and on behalf of his estate. At the time plaintiffs filed the complaint, the children were three and six years old. [29] ¶¶ 6, 7. The minors assert substantive-due-process claims and a state-law wrongful-death claim against Officers Kelly and Corral. The children also bring a wrongful-death claim against the City, and together with Hernandez's estate (raising a violation of Hernandez's *Fourth Amendment* right to be free from excessive force), bring **[*6]** *Monell* claims based on the City's code of silence, failure to maintain a proper early warning system, failure to investigate officer misconduct, and failure to discipline. Finally, the children bring a claim for the denial of access to the courts against the City (again asserting *Monell* liability). Defendants move to dismiss all counts.

## A. Substantive Due Process

The minors allege that Officers Kelly and Corral violated their substantive-due-process rights to their father's companionship. Defendants argue that plaintiffs' claims are time-barred and that they failed to allege that the officers violated the children's constitutional rights.

### 1. Statute of Limitations

For *§ 1983* actions, federal courts look to state law to determine the statute of limitations, tolling, and details of application. *Anderson v. Romero, 42 F.3d 1121, 1123-24 (7th Cir. 1994)*; *Ray v. Maher, 662 F.3d 770, 772-73 (7th Cir. 2011)*. In Illinois, federal courts borrow the two-year statute of limitations for personal injury actions. *735 ILCS 5/13-202*. If a cause of action accrues while the plaintiff is a minor, the statute of limitations is tolled until her twentieth birthday. *735 ILCS 5/13-211(a)*. *Section 1983* claims are personal to the injured party, so the claims by the estate are tied to Hernandez, and his children's status as minors does not toll claims asserted on behalf **[*7]** of the estate. *See Ray, 662 F.3d at 774*. But the minors' status tolls claims based on constitutional injuries to the minors themselves. *Id.* The children's claims for loss of their father's companionship implicate their constitutional rights, and so the statute of limitations is tolled. Because neither minor has turned eighteen, their due-process claims are timely.

### 2. Right of Companionship

Though their claims are timely, the minors have not alleged that Officers Kelly and Corral violated their substantive-due-process rights. The Supreme Court has recognized a parent's right to care for and raise his children without government interference, *see, e.g., Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)*, but the Court has not found a violation of that right where the action was not directed at the familial relationship. *See Russ v. Watts, 414 F.3d 783, 790 (7th Cir.*

2018 U.S. Dist. LEXIS 178296, *7

*2005)*. Affording a constitutional due-process right to recover against the state for actions not directed at the familial relationship creates "the risk of constitutionalizing all torts against individuals who happen to have families." *Id.* Though the relationship between minors and their parents "warrants sharply different constitutional treatment" than that between a parent and an adult child when a direct action is involved, *see id.*, extending **[*8]** that right to actions that indirectly affect the parent-minor relationship is an unnecessary and overbroad reading of the due-process clause.[3] Officers Kelly and Corral did not kill Hernandez to sever the children's continued right to companionship with their father. Their actions had the devastating effect of rendering the minors fatherless, and as a result the children can bring wrongful-death claims and the estate can seek relief for Hernandez's constitutional injuries (within established time limits). But the officers did not intend to interfere the minor's substantive-due-process rights, and so a claim based on those rights is not the appropriate avenue to seek their relief. *See Khan v. Gallitano, 180 F.3d 829, 835 (7th Cir. 1999)* ("[W]e will not create a redundant federal right that simply mirrors the available state-law tort.").

## B. *Monell* Liability

Plaintiffs argue that the City is liable for Officer Kelly's and Corral's actions because of its code of silence, failure to maintain a proper early warning system, failure to investigate officer misconduct, and failure to discipline. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization **[*9]** where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)*; *see also Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)* ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). So, plaintiffs' claims against the City must be based on the officers' underlying constitutional violation.

Defendants argue that plaintiffs' claims are barred by the statute of limitations. Because the officers did not violate the children's substantive-due-process rights, the Illinois tolling provision for minors does not matter—no constitutional violation was alleged and the City cannot be liable under a *Monell* theory without an underlying violation. *Sallenger v. City of Springfield, Ill., 630 F.3d 499, 504 (7th Cir. 2010)*. The *Monell* claims based on the substantive-due-process rights of the minors are dismissed for failure to state a claim.

As for Hernandez's excessive-force claims, his estate had two years from the date his claim accrued to file suit. *See Shropshear v. Corp. Counsel of Chi., 275 F.3d 593, 594 (7th Cir. 2001)*; *735 ILCS 5/13-202*. A § 1983 claim accrues when the plaintiff discovered his injury and that the defendant, or an employee of the defendant acting within the scope of his employment, may have caused the injury. *Liberty v. City of Chicago, 860 F.3d 1017, 1019 (7th Cir. 2017)*. Because Hernandez **[*10]** (and his estate) discovered his injury immediately, his claims accrued on the day the officers shot him, April 7, 2014,

---

[3] The Ninth and D.C. Circuits have held that state actions that indirectly affect a minor's continued companionship with a parent can constitute a due-process violation. *See Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1169-70 (9th Cir. 2013)*; *Franz v. United States, 707 F.2d 582, 594-95, 227 U.S. App. D.C. 385 (D.C. Cir. 1983)*. This expansive reading of the due-process clause runs counter to the Seventh Circuit's admonition not to constitutionalize every tort committed by the state against a family, and I follow the Seventh Circuit's lead here.

more than two years before plaintiffs filed their claims. The estate's claims, therefore, are time-barred unless a tolling doctrine applies. *See* *Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990)*. As noted above, that the minor children may be beneficiaries of the estate does not mean that the estate's claims are tolled during their childhood; tolling must be applicable to the estate or Hernandez directly.

*1. Equitable Tolling*

Under Illinois law, a "limitations period may be equitably tolled where 'extraordinary barriers' prevent the plaintiff from asserting [his] rights in a timely fashion, such as 'legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence.'" *Guar. Trust Life Ins. Co. v. Kribbs, 2016 IL App (1st) 160672, ¶ 48, 409 Ill. Dec. 938, 68 N.E.3d 1046* (quoting *Thede v. Kapsas, 386 Ill.App.3d 396, 403, 897 N.E.2d 345, 325 Ill. Dec. 97 (3d Dist. 2008)*). The degree of diligence required is a "fact-specific inquiry, guided by references to the hypothetical reasonable person." *Ralda-Sanden v. Sanden, 2013 IL App (1st) 121117, ¶ 20, 989 N.E.2d 1143, 371 Ill. Dec. 215*.

In addition to their FOIA request,[4] plaintiffs' counsel made discovery requests in other lawsuits against Officer Kelly, asking for all relevant incident reports. In those cases, the City withheld all information **[*11]** implicating Kelly in the shooting of Hernandez.[5] Plaintiffs

argue that between sending the FOIA request and engaging in discovery in other cases, they exercised reasonable diligence. As support, plaintiffs rely on *Bryant v. City of Chicago, 746 F.3d 239 (7th Cir. 2014)*. In *Bryant*, a pro se plaintiff filed timely claims against the City, police superintendent, and two unnamed officers and moved to compel the City to disclose the officers' names before the statute of limitations expired. *Id. at 242-43*. Plaintiffs here were not so diligent. Discovery by plaintiffs' counsel in other cases was not conducted on behalf of Davila or her children. So aside from the FOIA request, they did nothing to identify the officers responsible. Plaintiffs knew that Chicago police officers caused the injury, and they too could have filed suit against the superintendent as a nominal defendant along with unnamed officers and used discovery to determine their identities. *See, e.g., id.*; *Donald v. Cook Cty. Sheriff's Dep't, 95 F.3d 548, 561 (7th Cir. 1996)*. Instead, they did nothing. Had they filed suit and sought discovery, they could have learned of Officer Kelly's involvement and pursued their claims against him and the City. Plaintiffs suspected the City would not cooperate because of its behavior in the past, but that does not excuse them **[*12]** from trying. Though plaintiffs' counsel perhaps reasonably believed Officer Kelly was not involved, they did not use reasonable diligence to learn who was, and they offer no reason why they could not discover Officer Corral's role in the shooting. Equitable tolling does not apply.

*2. Equitable Estoppel*

Equitable estoppel, sometimes called fraudulent concealment, applies when the defendant takes active steps (including hiding evidence) to prevent the plaintiff from suing in

---

[4] Documents bearing on allegations of police misconduct are public information and a plaintiff can request them through the *Illinois Freedom of Information Act*. *Kalven v. City of Chicago, 2014 IL App (1st) 121846, ¶ 32, 379 Ill. Dec. 903, 7 N.E.3d 741*.

[5] It is not clear from the complaint when plaintiffs' counsel began representing the minors and the Hernandez estate, or whether that occurred before learning about Officer Kelly's

---

involvement.

time. *Cada, 920 F.2d at 450*; *Shanoff v. Ill. Dep't of Human Servs., 258 F.3d 696, 702 (7th Cir. 2001)*. Because the motivation behind equitable estoppel is a general disapproval of inequitable conduct, federal courts borrowing state statutes of limitations apply the federal version of equitable estoppel, which does not require the exercise of due diligence by the plaintiff. *Shropshear, 275 F.3d at 598*. The focus is on the defendant's misconduct, but a plaintiff must also show that she reasonably relied on that misconduct and that she filed suit promptly after the conduct that resulted in estoppel was removed. *Ashafa v. City of Chicago, 146 F.3d 459, 463-64 (7th Cir. 1998)*. As evidence of the City's misconduct, plaintiffs point to the City's discovery violations and failure to disclose Officer Kelly's role in Hernandez's shooting in other lawsuits where Kelly was a named defendant and in response **[\*13]** to the FOIA request. That Kelly was involved is critical, plaintiffs argue, because it is his history of misconduct that makes the City liable.

The City's refusal to release the officers' names in response to the FOIA request does not trigger equitable estoppel because a reasonable plaintiff would not rely on that misconduct when he could file suit and use discovery to find out who was involved. Plaintiffs also argue that they reasonably relied on the City's discovery disclosures in other cases—which were supposed to include all incidents Kelly had been involved in and did not include any information about the Hernandez shooting—and that those omissions induced them not to file suit.[6] Though that may have prevented the plaintiffs from knowing about the City's liability, it does

not explain why they could not have sued unnamed officers, and brought any discovery misconduct to the court's attention. And because *Monell* is a theory of liability and not a separate cause of action, there was no reason for plaintiffs to wait until learning about the City's involvement to file this lawsuit. Officer Kelly's disciplinary history may have strengthened plaintiffs' argument for *Monell* liability, **[\*14]** but it was unreasonable for plaintiffs not to file suit simply because they did not know that one specific officer with a history of misconduct was involved.

Plaintiffs learned of Officer Kelly's involvement in a deposition in another lawsuit in June 2016 but did not file their original complaint until November 2017. Even if it were reasonable to wait to file suit until learning Kelly was involved, plaintiffs did not file suit promptly after discovering that information. *See Ashafa, 146 F.3d at 464*. Equitable estoppel does not apply.

### 3. Illinois's Fraudulent Concealment Statute

Though federal courts apply the federal doctrine of equitable estoppel, the Illinois codified doctrine of fraudulent concealment may also render federal claims timely. *See Smith v. City of Chicago Heights, 951 F.2d 834, 837 (7th Cir. 1992)* (considering whether the statute tolled the plaintiff's *§ 1983* claims). The Illinois Fraudulent Concealment Statute provides a five-year limitations period from the time of discovery where a party "liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto." *735 ILCS 5/13-215*. Illinois courts construe this provision to encompass only fraudulent concealment of the cause of action, not concealment of the identity of the tortfeasor. **[\*15]** *Kribbs, 2016 IL App (1st) 160672 ¶ 35*.

---

[6] There is no allegation that the plaintiffs were depending on other litigation conducted by their lawyers for other clients, or that discovery produced in other lawsuits could be used for other purposes (ordinarily, a confidentiality order would limit such use). But for purposes of the motion to dismiss, I will infer these facts in plaintiffs' favor.

Plaintiffs point to the same misconduct asserted with respect to equitable estoppel: that the City withheld information about Officer Kelly's misconduct. But while plaintiffs argue they did not know the identity of the officers or therefore that the City was liable, defendants did nothing to conceal the cause of action itself—the officers' excessive force—so the fraudulent-concealment statute does not extend the limitations period.

Because none of the tolling doctrines plaintiffs rely on apply, the estate's federal claims based on excessive force are time-barred. A statute of limitations is an affirmative defense, but dismissal under *12(b)(6)* is appropriate "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense." *Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012)*. It is clear from the complaint that plaintiffs' claims accrued on the day the officers shot Hernandez. Even if defendants improperly withheld the identify of Officer Kelly to avoid triggering *Monell* liability, plaintiffs had all the information necessary to file their complaint within the statute of limitations and any reliance on the City's misrepresentations was unreasonable.

## C. Access to Courts

Plaintiffs also allege that defendants **[*16]** violated the children's constitutional right of access to the courts. To state a violation of this right, plaintiffs must allege (1) the City hindered their efforts to pursue a nonfrivolous legal claim and (2) they consequently suffered a concrete injury. *May v. Sheahan, 226 F.3d 876, 883 (7th Cir. 2000)*. For the reasons discussed, plaintiffs have not alleged that the City hindered their efforts to pursue a legal claim. Plaintiffs had everything they needed to file this lawsuit on time, and any misconduct by the City did not impede their access to the courts.

## D. Illinois Wrongful Death Act

The minors bring *Illinois Wrongful Death Act* claims pursuant to *740 ILCS 180/1*. Defendants withdrew their argument that these claims were untimely. Because the federal claims are dismissed, I decline to exercise supplemental jurisdiction over the state wrongful-death claims and dismiss them without prejudice. *See Hagan v. Quinn, 867 F.3d 816, 830 (7th Cir. 2017)*.

Dismissal of the federal claims is with prejudice. Although leave to amend should be freely given "when justice so requires," *Fed. R. Civ. P. 15(a)(2)*, "district courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008)*. Because plaintiffs would not be able to fix the issues justifying dismissal of their federal claims, namely, the absence **[*17]** of a constitutional violation against the children and the expiration of the statute of limitations, dismissal of those claims is with prejudice.

## IV. Conclusion

Defendants' motion to dismiss, [30], is granted. The state-law claims are dismissed without prejudice. Enter judgment and terminate civil case.

ENTER:

/s/ Manish S. Shah

Manish S. Shah

United States District Judge

Date: October 17, 2018


Neutral

As of: February 22, 2019 6:28 PM Z

## *Moultrie v. Penn Aluminum Int'l, LLC*

United States District Court for the Southern District of Illinois

July 31, 2012, Decided; July 31, 2012, Filed

No. 11-cv-500-DRH

**Reporter**

2012 U.S. Dist. LEXIS 106133 *; 2012 WL 3113914

LEVIA MOULTRIE, Plaintiff, v. PENN ALUMINUM INTERNATIONAL, LLC, THE MARMON GROUP, LLC, and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, LOCAL 702, Defendants.

**Subsequent History:** Later proceeding at *Moultrie v. Penn Aluminum Int'l, LLC, 2012 U.S. Dist. LEXIS 110896 (S.D. Ill., Aug. 8, 2012)*

Certification denied by, Motion denied by *Moultrie v. Penn Aluminum Int'l, LLC, 2012 U.S. Dist. LEXIS 170153 (S.D. Ill., Nov. 30, 2012)*

Motion denied by *Moultrie v. Penn Aluminum Int'l, LLC, 2012 U.S. Dist. LEXIS 170157 (S.D. Ill., Nov. 30, 2012)*

Later proceeding at *Moultrie v. Penn Aluminum Int'l, LLC, 2012 U.S. Dist. LEXIS 171721 (S.D. Ill., Dec. 4, 2012)*

Objection denied by *Moultrie v. Penn Aluminu Int'l, LLC, 2012 U.S. Dist. LEXIS 172850 (S.D. Ill., Dec. 6, 2012)*

Summary judgment granted by, Motion denied by *Moultrie v. Penn Aluminum Int'l, LLC, 2013 U.S. Dist. LEXIS 63047 (S.D. Ill., May 2, 2013)*

Costs and fees proceeding at, Motion granted by, in part, Motion denied by, in part *Moultrie v. Penn Aluminum Int'l, LLC, 2014 U.S. Dist.*

*LEXIS 2604 (S.D. Ill., Jan. 8, 2014)*

## Core Terms

notice, circuit court, Rights, days, commencement of civil action, notify, civil rights violation, substantial evidence, chooses, parties, tolled, motion to dismiss, time limit, allegations, charges, determines, issues, investigating the charges, days of receipt, dismissal notice, aggrieved party, ninety days, good cause, default

**Counsel:** [*1] For Levia Moultrie, Plaintiff: Jana Yocom, Law Offices of Jana Yocom, Mt. Vernon, IL.

For Penn Aluminum International, LLC, Defendant: Laura M. Jordan, LEAD ATTORNEY, Thompson Coburn - St. Louis, MO, St. Louis, MO; Susan M. Lorenc, LEAD ATTORNEY, Thompson Coburn LLP-Chicago, Chicago, IL.

For The Marmon Group, LLC, Defendant: Susan M. Lorenc, Thompson Coburn LLP-Chicago, Chicago, IL.

For International Brotherhood of Electrical Workers Local 702, also known as Local 702 International Brotherhood of Electrical Workers AFL-CIO, Defendant: Marilyn S. Teitelbaum, Schuchat, Cook & Werner, St. Louis, MO; Rochelle G. Skolnick, Schuchat, Cook et al., St. Louis, MO.

**Judges:** David R. Herndon, Chief United States District Judge.

2012 U.S. Dist. LEXIS 106133, *1

**Opinion by:** David R. Herndon

# Opinion

### ORDER

### HERNDON, Chief Judge:

Before the Court is defendant Penn Aluminum International, LLC's ("Penn Aluminum") motion to dismiss count IV (Doc. 35), a violation of the Illinois Human Rights Act (the "IHRA" or the "Act"), *775 ILCS 5/1-101 et seq.*, of plaintiff Levia Moultrie's first amended complaint (Doc. 35). For the reasons stated below, defendant Penn Aluminum's motion to dismiss (Doc. 35) is granted because plaintiffs IHRA claim is untimely.

### I. Background

On September **[*2]** 3, 2009, plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Opportunity Commission ("EEOC"). On November 16, 2010, the IDHR notified plaintiff that it determined that there was not substantial evidence to support the allegations of his charges. Accordingly, the IDHR dismissed the charges and gave plaintiff notice that plaintiff could seek review of the dismissal before the Illinois Human Rights Commission (the "Commission") by filing a "Request for Review" by December 21, 2010, or could "commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice." The notice also informed plaintiff if he intended to exhaust his State remedies, he should notify the EEOC immediately as "[t]he EEOC generally adopts the Department's findings." The notice also contained the following information:

4. If an EEOC charge number is cited

above, this charge was also filed with the [EEOC]. If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complaintant has the right to request EEOC to perform a Substantial **[*3]** Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

On March 30, 2011, the EEOC sent plaintiff a dismissal and notice of rights, notifying plaintiff that the EEOC was closing its file on his charge and as the notice sent by the IDHR had warned plaintiff if he did not request the EEOC to perform a review within fifteen days, the EEOC had adopted the findings of the IDHR. The dismissal stated:

This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 days of your **[*4]** receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

On June 14, 2011, plaintiff filed his complaint in federal court against Penn Aluminum

alleging three counts: racial discrimination, retaliation, and violations of the IHRA. On October 26, 2011, plaintiff filed his first amended complaint, adding claims against the Marmon Group, LLC ("Marmon"), the parent company of Penn Aluminum, and the International Brotherhood of Electrical Workers, AFL-CIO, Local 702 (the "Union"), the labor organization to which plaintiff belonged. Specifically, plaintiff alleged five counts, including his IHRA violation claim (count IV) against Penn Aluminum, breach of contract (count I), racial discrimination (count III), and retaliation (count V) claims against Penn Aluminum and Marmon, and a § 301 breach of duty of fair representation claim (count II) against the Union. At issue here is Penn Aluminum's motion to dismiss the IHRA claim (count IV) for lack of timeliness (Doc. 35).

## II. Motion to Dismiss

A motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* challenges the sufficiency of the **[*5]** complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997)*. To survive a motion to dismiss, a complaint must establish a plausible right to relief. *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. The allegations of the complaint must be sufficient "to raise a right to relief above the speculative level." *Id.*

In making this assessment, the district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. See *Rujawitz v. Martin, 561 F.3d 685, 688 (7th Cir. 2009)*; *St. John's United Church of Christ v. City of Chi., 502 F.3d 616, 625 (7th Cir. 2007)*, *cert. denied, 553 U.S. 1032, 128 S. Ct. 2431, 171 L. Ed. 2d 230 (2008)*. Even though *Twombly (and*

*Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))* retooled federal pleading standards, notice pleading remains all that is required in a complaint: "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)*. **[*6]** It is well settled that in deciding a motion to dismiss, a court may consider documents attached to the motion to dismiss if they are referred to in plaintiff's complaint and are central to his claim. *Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012)* (quoting *Wright v. Assoc. Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994))*.

## III. Analysis

It is undisputed that plaintiff was issued his notice of dismissal from the IDHR on November 16, 2010. Pursuant to the IHRA, if an aggrieved individual who has filed a charge with the IDHR chooses to commence a civil action in a circuit court, he or she must do so within ninety days after receipt of the IDHR's notice of dismissal. *775 ILCS 5/7A-102(C)(4)*. Ninety days from November 16, 2010, was February 14, 2011. Plaintiff did not file his original complaint against Penn Aluminum, however, until June 14, 2011, four months after the IHRA deadline. This Court held in *Brandenburg v. Earl L. Henderson Trucking, Co., LLC, No. 09-cv-558, 2010 U.S. Dist. LEXIS 53664, at *14 (S.D. Ill. June 2, 2010)*, that an IHRA claim not brought within the ninety day period is properly dismissed as untimely. Thus, plaintiff's IHRA claim against **[*7]** Penn Aluminum must be dismissed.

Recognizing this, plaintiff asserts that the IHRA sets forth the intent of the Illinois

2012 U.S. Dist. LEXIS 106133, *7

legislature that any time limit for filing a state law claim is tolled during the EEOC investigation. In support, plaintiff points to *775 ILCS 5/7A-102(A-1)(5)* which provides that the "[t]he time limit set out in *subsection (G)* of this Section is tolled from the date on which the charged is filed with the EEOC to the date on which the EEOC issues its determination." *775 ILCS 5/7A-102(A-1)(5)*. Plaintiff asserts that since the EEOC did not issue its determination until March 30, 2011, the ninety day limitations period did not start running until that time. Alternatively, plaintiff argues that the state law ninety day period marks the end of state jurisdiction but does not end federal jurisdiction. Plaintiff posits that the Illinois ninety day period defines the end of the time within which a plaintiff may pursue exhaustion of state administrative remedies.

"Courts must apply a statute as written when the language is plain and unambiguous." *Manning v. United States, 546 F.3d 430, 433 (7th Cir. 2008)* (citing *Dodd v. United States, 545 U.S. 353, 359, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005)*). When interpreting **[*8]** statutes, words are given their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent. *Gillespie v. Equifax Info. Servs., L.L.C., 484 F.3d 938, 941 (7th Cir. 2007)* (quoting *United States v. Davis, 471 F.3d 783, 787 (7th Cir. 2006)*). Courts must construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant. *Gillespie, 484 F.3d at 941* (quoting *Cole v. U.S. Capital, 389 F.3d 719, 725 (7th Cir. 2004)*). Courts should interpret the statute so as to reach a reasonable result, consistent with the intent of the statutory scheme. *Id.* The title of a section can clarify ambiguities in the legislation's text. *Storie v. Randy's Auto Sales, LLC, 589 F.3d 873, 877 (7th Cir. 2009)* (citing *INS v. Nat'l Ctr. for Immigrants' Rights, 502*

*U.S. 183, 189-90, 112 S. Ct. 551, 116 L. Ed. 2d 546 (1991)*).

Section *775 ILCS 5/7A-102* of the IHRA sets forth the procedures for filing a charge under the Act. That section provides as follows:

Sec. 7A-102. Procedures. (A) *Charge.*

(1) Within 180 days after the date that a civil rights violation allegedly has been committed, **[*9]** a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director.
(2) The charge shall be in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation.
(3) Charges deemed filed with the Department pursuant to subsection (A-1) of this Section shall be deemed to be in compliance with this subsection.
(A-1) Equal Employment Opportunity Commission Charges.

(1) If a charge is filed with the Equal Employment Opportunity Commission (EEOC) within 180 days after the date of the alleged civil rights violation, the charge shall be deemed filed with the Department on the date filed with the (EEOC). If the EEOC is the governmental agency designated to investigate the charge first, the Department shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination. In such cases, after receiving notice from the EEOC that a charge was filed, the Department shall notify the parties that (i) a charge has been received by the EEOC **[*10]** and has been sent to the Department for dual filing purposes; (ii) the EEOC is the

governmental agency responsible for investigating the charge and that the investigation shall be conducted pursuant to the rules and procedures adopted by the EEOC; (iii) it will take no action on the charge until the EEOC issues its determination; (iv) the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant; and (v) that the time period to investigate the charge contained in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC until the EEOC issues its determination.

(2) If the EEOC finds reasonable cause to believe that there has been a violation of federal law and if the Department is timely notified of the EEOC's findings by complainant, the Department shall notify complainant that the Department has adopted the EEOC's determination of reasonable cause and that complainant has the right, within 90 days after receipt of the Department's notice, to either file his or her own complaint with the Illinois Human Rights Commission or commence a civil action in the appropriate circuit **[*11]** court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination of reasonable cause shall constitute the Department's Report for purposes of subparagraph (D) of this Section.

(3) For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish

that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by complainant, the Department shall notify the parties that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.

(a) If the complainant does not file a written request with the Department to review the EEOC's determination **[*12]** within 35 days after receipt of the Department's notice, the Department shall notify complainant that the decision of the EEOC has been adopted by the Department as a dismissal for lack of substantial evidence and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination shall constitute the Department's report for purposes of subparagraph (D) of this Section.

(b) If the complainant does file a written request with the Department to review the EEOC's determination, the Department shall review the EEOC's determination and any evidence obtained by the EEOC during its investigation. If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is no need for further investigation of the charge, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil

rights violation has been committed pursuant to subsection (D) of Section 7A-102. **[*13]** If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is a need for further investigation of the charge, the Department may conduct any further investigation it deems necessary. After reviewing the EEOC's determination, the evidence obtained by the EEOC, and any additional investigation conducted by the Department, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed pursuant to subsection (D) of Section 7A-102 of this Act.

(4) Pursuant to this Section, if the EEOC dismisses the charge or a portion of the charge of discrimination because, under federal law, the EEOC lacks jurisdiction over the charge, and if, under this Act, the Department has jurisdiction over the charge of discrimination, the Department shall investigate the charge or portion of the charge dismissed by the EEOC for lack of jurisdiction pursuant to subsections (A), (A-1), (B), (B-1), (C), (D), (E), (F), (G), (H), (I), (J), and (K) of Section 7A-102 of this Act.

(5) The time limit set out in subsection (G) of this Section is tolled from the date **[*14]** on which the charge is filed with the EEOC to the date on which the EEOC issues its determination.

(B) *Notice and Response to Charge.* The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent. This period shall not be construed to be jurisdictional. The charging party and the respondent may each file a position statement and other materials with the Department regarding the charge of alleged discrimination within 60 days of receipt of the notice of the charge. The position statements and other materials filed shall remain confidential unless otherwise agreed to by the party providing the information and shall not be served on or made available to the other party during pendency of a charge with the Department. The Department shall require the respondent to file a verified response to the allegations contained in the charge within 60 days of receipt of the notice of the charge. The respondent shall serve a copy of its response on the complainant or his representative. All allegations contained in the charge not timely denied by the respondent shall be deemed admitted, unless the respondent states that it is without sufficient **[*15]** information to form a belief with respect to such allegation. The Department may issue a notice of default directed to any respondent who fails to file a verified response to a charge within 60 days of receipt of the notice of the charge, unless the respondent can demonstrate good cause as to why such notice should not issue. The term "good cause" shall be defined by rule promulgated by the Department. Within 30 days of receipt of the respondent's response, the complainant may file a reply to said response and shall serve a copy of said reply on the respondent or his representative. A party shall have the right to supplement his response or reply at any time that the investigation of the charge is pending. The Department shall, within 10 days of the date on which the charge was filed, and again no later than 335 days thereafter, send by certified or registered mail written notice to the complainant and to the respondent informing the complainant of the complainant's right to

either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court under subparagraph (2) of paragraph (G), including in such notice the dates within which the **[*16]** complainant may exercise this right. In the notice the Department shall notify the complainant that the charge of civil rights violation will be dismissed with prejudice and with no right to further proceed if a written complaint is not timely filed with the Commission or with the appropriate circuit court by the complainant pursuant to subparagraph (2) of paragraph (G) or by the Department pursuant to subparagraph (1) of paragraph (G).

(B-1) *Mediation.* The complainant and respondent may agree to voluntarily submit the charge to mediation without waiving any rights that are otherwise available to either party pursuant to this Act and without incurring any obligation to accept the result of the mediation process. Nothing occurring in mediation shall be disclosed by the Department or admissible in evidence in any subsequent proceeding unless the complainant and the respondent agree in writing that such disclosure be made.


(C) *Investigation.*
(1) After the respondent has been notified, the Department shall conduct a full investigation of the allegations set forth in the charge.

(2) The Director or his or her designated representatives shall have authority to request any member of the Commission **[*17]** to issue subpoenas to compel the attendance of a witness or the production for examination of any books, records or documents whatsoever.

(3) If any witness whose testimony is required for any investigation resides

outside the State, or through illness or any other good cause as determined by the Director is unable to be interviewed by the investigator or appear at a fact finding conference, his or her testimony or deposition may be taken, within or without the State, in the same manner as is provided for in the taking of depositions in civil cases in circuit courts.

(4) Upon reasonable notice to the complainant and the respondent, the Department shall conduct a fact finding conference, unless prior to 365 days after the date on which the charge was filed the Director has determined whether there is substantial evidence that the alleged civil rights violation has been committed, the charge has been dismissed for lack of jurisdiction, or the parties voluntarily and in writing agree to waive the fact finding conference. Any party's failure to attend the conference without good cause shall result in dismissal or default. The term "good cause" shall be defined by rule promulgated by the **[*18]** Department. A notice of dismissal or default shall be issued by the Director. The notice of default issued by the Director shall notify the respondent that a request for review may be filed in writing with the Commission within 30 days of receipt of notice of default. The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a

circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(D) *Report.*

(1) Each charge shall be the subject of a report to the Director. The report shall be a confidential document subject to review by the Director, authorized Department employees, the parties, **[*19]** and, where indicated by this Act, members of the Commission or their designated hearing officers.

(2) Upon review of the report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. The determination of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and includes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues. Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance.

(3) If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the **[*20]** Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(4) If the Director determines that there is substantial evidence, he or she shall notify the complainant and respondent of that determination. The Director shall also notify the parties that the complainant has the right to either commence a civil action in the appropriate circuit court or request that the Department of Human Rights file a complaint with the Human Rights Commission on his or her behalf. Any such complaint shall be filed within 90 days after receipt of the Director's notice. If the complainant chooses to have the Department file a complaint with the Human Rights Commission on his or her behalf, the complainant must, within 30 days after receipt of the Director's notice, request in writing that the Department file the complaint. If the complainant timely requests that the Department file the complaint, the Department **[*21]** shall file the complaint on his or her behalf. If the complainant fails to timely request that the Department file the complaint, the complainant may file his or her complaint with the Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Human Rights Commission, the complainant shall give notice to the Department of the filing of the complaint with the Human Rights Commission.

(E) *Conciliation.*

(1) When there is a finding of substantial evidence, the Department may designate a Department employee who is an attorney licensed to practice in Illinois to endeavor

to eliminate the effect of the alleged civil rights violation and to prevent its repetition by means of conference and conciliation.

(2) When the Department determines that a formal conciliation conference is necessary, the complainant and respondent shall be notified of the time and place of the conference by registered or certified mail at least 10 days prior thereto and either or both parties shall appear at the conference in person or by attorney.

(3) The place fixed for the conference shall be within 35 miles of the place where the civil rights violation is alleged **[*22]** to have been committed.

(4) Nothing occurring at the conference shall be disclosed by the Department unless the complainant and respondent agree in writing that such disclosure be made.

(5) The Department's efforts to conciliate the matter shall not stay or extend the time for filing the complaint with the Commission or the circuit court.

(F) *Complaint.*

(1) When the complainant requests that the Department file a complaint with the Commission on his or her behalf, the Department shall prepare a written complaint, under oath or affirmation, stating the nature of the civil rights violation substantially as alleged in the charge previously filed and the relief sought on behalf of the aggrieved party. The Department shall file the complaint with the Commission.

(2) If the complainant chooses to commence a civil action in a circuit court, he or she must do so in the circuit court in the county wherein the civil rights violation was allegedly committed. The form of the complaint in any such civil action shall be in accordance with the Illinois Code of Civil

Procedure.

(G) *Time Limit.*

(1) When a charge of a civil rights violation has been properly filed, the Department, within 365 days thereof or **[*23]** within any extension of that period agreed to in writing by all parties, shall issue its report as required by subparagraph (D). Any such report shall be duly served upon both the complainant and the respondent.

(2) If the Department has not issued its report within 365 days after the charge is filed, or any such longer period agreed to in writing by all the parties, the complainant shall have 90 days to either file his or her own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Commission, the form of the complaint shall be in accordance with the provisions of paragraph (F) (1). If the complainant commences a civil action in a circuit court, the form of the complaint shall be in accordance with the Illinois Code of Civil Procedure. The aggrieved party shall notify the Department that a complaint has been filed and shall serve a copy of the complaint on the Department on the same date that the complaint is filed with the Commission or in circuit court. If the complainant files a complaint with the Commission, he or she may not later commence a civil action in circuit court.

(3) If an **[*24]** aggrieved party files a complaint with the Human Rights Commission or commences a civil action in circuit court pursuant to paragraph (2) of this subsection, or if the time period for filing a complaint has expired, the Department shall immediately cease its investigation and dismiss the charge of civil rights violation. Any final order entered

by the Commission under this Section is appealable in accordance with paragraph (B)(1) of Section 8-111. Failure to immediately cease an investigation and dismiss the charge of civil rights violation as provided in this paragraph (3) constitutes grounds for entry of an order by the circuit court permanently enjoining the investigation. The Department may also be liable for any costs and other damages incurred by the respondent as a result of the action of the Department.

(4) The Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights violation.

(H) This amendatory Act of 1995 applies to causes of action filed on or after January 1, 1996.

(I) This amendatory Act of 1996 applies **[*25]** to causes of action filed on or after January 1, 1996.

(J) The changes made to this Section by Public Act 95-243 apply to charges filed on or after the effective date of those changes.

(K) The changes made to this Section by this amendatory Act of the 96th General Assembly apply to charges filed on or after the effective date of those changes.

*775 ILCS 5/7A-102*.

The problem with plaintiff's argument is that while *subsection (A-1)(5)* may toll the time limit set out in *subsection (G)* until the EEOC issues its determination, plaintiff's entire argument is prefaced on if *subsection (A-1)* applies. A reading of the entire statute reveals that the section plaintiff relies on applies "[i]f the EEOC is the governmental agency designated to investigate the charge first . . . ." Id. at *(A-1)(1)*. That is not what happened

here. Here, the Department conducted its investigation pursuant to *subsection (C)* and issued its report pursuant to *subsection (D)*. That report concluded that there was no substantial evidence that the alleged civil rights violation had been committed and notified plaintiff that he file for review with the Illinois Human Rights Commission by December 21, 2010, or plaintiff could **[*26]** commence a civil action in the appropriate circuit court within ninety days after receipt of the notice. This notice was clearly given to plaintiff and plaintiff failed to act within that time frame. Thus, just as in *Brandenburg*, plaintiff's failure to timely file his IHRA claims within the ninety days is fatal to his claim. See *Robinson v. Human Rights Comm'n, 201 Ill. App. 3d 722, 559 N.E.2d 229, 233, 147 Ill. Dec. 229 (Ill. App. Ct. 1990)* (finding the IHRA's 180 day filing period to be a jurisdictional time limit for filing a charge). Moreover, despite plaintiff's arguments, the Court does not believe this is a situation where tolling should be applied. See *Davis v. Human Rights Comm'n, 286 Ill. App. 3d 508, 676 N.E.2d 315, 324, 221 Ill. Dec. 794 (Ill. App. Ct. 1997)* (holding that the Commission's determination that the complaint was untimely was correct and that equitable principles should not toll the statutory 30-day window period provided for in *subsection (G)(2)*); *Robinson, 559 N.E.2d at 233* ("We strongly question the applicability of the equitable principle of tolling to any jurisdictional time limitation even under circumstances where any agency has arguably contributed to a late filing."); *Larrance v. Human Rights Comm'n, 166 Ill. App. 3d 224, 519 N.E.2d 1203, 1209, 117 Ill. Dec. 36 (Ill. App Ct. 1988)* **[*27]** ("Equitable tolling is a concept which should be applied to prevent injustice when the agency has knowingly misled a complainant or in some manner acted unfairly."). No injustice has occurred here. Plaintiff was given ample time to pursue his IHRA claim but failed to do

2012 U.S. Dist. LEXIS 106133, *27

so. This prohibits plaintiff from pursuing that state law claim in Illinois circuit court or federal court.

## IV. Conclusion

For the reasons stated above, the Court grants Penn Aluminum's motion to dismiss count IV (Doc. 35).

**IT IS SO ORDERED.**

**Signed this 31st day of July, 2012.**

/s/ David R. Herndon

**Chief Judge**

**United States District Court**

---